IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY CHRISTIAN,                )
                                  )
            Plaintiff,            )
                                  )
      vs.                         )   Civil Action No. 13-584
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY,                         )
                                  )
            Defendant.            )

O R D E R

AND NOW, this 30th day of September, 2014, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on August 27, 2013,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 9) filed in the above-captioned matter on August 7, 2013,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

On January 19, 2010, Plaintiff Timothy Christian filed his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for

1

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Specifically, Plaintiff claimed that he became disabled on January 1, 2009, due to depression, back pain, swelling in his left leg and feet, and migraines. (R. 42, 166).

After being denied initially on June 28, 2010, Plaintiff sought and obtained a hearing before an Administrative Law Judge ("ALJ") on August 11, 2011. (R. 55-77, 35-50). In a decision dated September 22, 2011, the ALJ denied Plaintiff's request for benefits. (R. 21-30). The Appeals Council declined to review the ALJ's decision on March 7, 2013. (R. 1-5). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id. at 317. A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)) (emphasis in original).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, Step Two of the process requires the Commissioner to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe

impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the Commissioner to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At Step Five, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the Commissioner should consider the claimant's RFC, age, education, and past work experience. See id. The Commissioner must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through September 30, 2014. (R. 23). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that he was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 23). The ALJ also found that Plaintiff had the following severe impairments: major depressive disorder, mood disorder, posttraumatic stress disorder (PTSD), personality disorder, headaches and hypertension (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (Id. at 24).

At Step Four, the ALJ found that Plaintiff retained the RFC to perform at least light work, except that he is "limited to work performed in a stable, low stress work environment, defined in this case as simple, routine, repetitive tasks involving only minimal contact with the public, co-workers and supervisors." (Id. at 25). Based on this RFC, Plaintiff established that he is incapable of returning to his past employment; therefore, the ALJ moved on to Step Five. (Id. at 28). Vocational expert Daniel Edelman testified at the hearing that there were a significant number of jobs in the national economy that Plaintiff could perform given his limitations. (Id. at 29, 48).

## IV. Legal Analysis

Plaintiff argues that remand is warranted because the ALJ: (i) failed to evaluate properly the opinion of David Prybock, the state agency consultative examining psychologist who found moderate to marked limitations in Plaintiff's ability to perform work-related mental functions; (ii) selectively reviewed and mischaracterized mental health treatment records from Mercy Behavior Health ("MBH"); and (iii) failed to address the numerous global assessment of functioning ("GAF") scores of 50 and below indicating that Plaintiff's mental issues caused serious impairments in his ability to function.

Defendant asserts that substantial evidence supports the ALJ's decision to assign minimal weight to Dr. Prybock's opinion and contends that the ALJ accurately summarized the content of Plaintiff's mental health records from MBH. Citing to Gilroy v. Astrue, 351 Fed. Appx. 714, 715-16 (3d Cir. 2009), Defendant maintains that the ALJ was not required to discuss every GAF score in the record and further argues that remand is not required because the ALJ referenced the GAF score given by Dr. Prybock, which, according to Defendant, was the lowest in the record.

After careful review of the record, the Court agrees that remand is warranted in this case. Specifically, the Court finds that the ALJ's failure to discuss over half a dozen low GAF scores in the record cannot be saved by Gilroy or its progeny under these facts. Accordingly, the Court will remand the case for further consideration consistent with this Order.

GAF scores "are used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults." Irizarry v. Barnhart, 233 Fed. Appx. 189, 190 n.1 (3d Cir. 2007). "The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." West v. Astrue, 2010 WL 1659712, at *4 (E.D. Pa. Apr. 26, 2010). Generally, a plaintiff's GAF score is not considered to have a "direct correlation to the severity requirements of the . . . mental disorder listings." 65 Fed. Reg. 50746, 50764-65 (Social Security Administration Rules and Regulations) (2000). Nonetheless, GAF scores constitute opinion evidence[1] and the rules note that GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." Id. As such, "it constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination

---

[1] Administrative Message 13066 dated July 22, 2013: Global Assessment of Functioning (GAF) Evidence in Disability Adjudication ("We consider a GAF rating as opinion evidence.").

regarding a claimant's disability." Wiggers v. Astrue, 2010 WL 1904015, at *8 (W.D. Pa. May 10, 2010) (quoting Watson v. Astrue, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009)).

In this case, Plaintiff's treatment records from MBH contained 16 GAF scores ranging from 40 to 55.[2] Of those scores, Plaintiff received eight GAF ratings of 50 or below and a GAF score of 40 on three separate occasions.[3] Although the GAF score evidence indicated that Plaintiff had serious to major impairments resulting from his mental health issues, the ALJ carried on his discussion as if these scores did not exist in the record. Accordingly, because the ALJ failed to address the multiple low GAF scores in the record and explain his assessment of that relevant medical evidence, the Court is left wondering whether he actually considered and rejected the low GAF scores based on a legitimate reason, or whether he ignored them altogether.

The Court recognizes that, in some cases, remand is not required where an ALJ fails to discuss low GAF scores in the record. See Gilroy, 351 Fed. Appx. at 715-16; Rios v. Comm'r of Soc. Sec, 444 Fed. Appx. 532, 535 (3d Cir. 2011). However, the Court finds that this case is distinguishable from Gilroy and Rios. For example, in Gilroy, the Third Circuit held that the

---

[2] Specifically, between July 9, 2009 and March 30, 2011, Plaintiff received the following GAF scores from his treating sources at MBH: (1) 55 on 7/9/09; 2) 52 on 7/14/09; 3) 55 on 7/14/09; 4) 55 on 11/2/09; 5) **40** on 11/9/09; 6) **48** on 12/7/09; 7) **50** on 1/4/10; 8) **40** on 1/19/10; 9) **40** on 3/16/10; 10) **48** on 4/6/10; 11) **50** on 4/21/10; 12) **50** on 5/3/10; 13) 52 on 8/10/10; 14) 52 on 1/26/11; 15) 55 on 2/23/11; and 16) 55 on 3/30/11. (R. 275-382).

[3] "A GAF score of 31–40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or **major impairment** in several areas such as work or school, family relations, judgment, thinking or mood." DSM-IV at 34. "A GAF score of 41–50 indicates an individual has **serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Rios v. Comm'r of Soc. Sec., 444 Fed. Appx. 532, 534 n. 3 (3d Cir. 2011). A GAF score of 51–60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)." Id.

7

ALJ's failure to discuss a treating psychiatrist's "*one-time rating* of GAF 45" did not warrant remand because (1) the ALJ "made repeated references to observations from [the psychiatrist]'s report," (2) the reports did not "express any opinions regarding specific limitations," and (3) the reports did not explain the basis for the GAF rating. 351 Fed. Appx. at 716 (emphasis added). In <u>Rios</u>, the record before the ALJ contained three GAF scores and the ALJ failed to address two GAF scores of 50. The Court found that remand was not warranted in that case because the ALJ made specific reference to the consultative examiner's GAF score of "50-55", and as such, he "used a score that . . . reflect[ed] Rios's therapist's and doctors' notes that his symptoms ranged from moderate to severe." 444 Fed. Appx. at 534-35. <u>Id.</u>

However, unlike <u>Gilroy</u>, there was more than just one GAF rating in the record -- there were 16, and eight of them reflected scores of 50 and below. The Court cannot overlook the ALJ's error, particularly when the only GAF score actually mentioned by the ALJ was erroneously relayed as being a 50, when in fact it was a 45. As noted, Plaintiff was assessed with a GAF of 40 on three separate occasions, so contrary to Defendant's assertion, Dr. Prybock's GAF score of 45 was not the lowest score in the record. Thus, unlike <u>Rios</u>, the ALJ's reference to Dr. Prybock's score cannot remedy his error because "[a]n ALJ may not "cherry-pick" higher GAF scores in his analysis and ignore GAF scores that may support a disability." <u>Rivera v. Astrue</u>, 2014 WL 1281136, at *8 (E.D. Pa. Mar. 27, 2014).

The numerous low GAF scores in the record indicated that Plaintiff's mental issues may have caused serious to major impairments in his ability to function, and the ALJ was required to explain how those scores were consistent with his ultimate finding that Plaintiff's mental issues were not so severe so as to interfere with his ability to engage in substantial gainful activity. <u>See</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ provided a brief discussion of the

MBH treatment records and stated that he "considered the treatment records from [MBH] and [found] them [to be] compatible with the residual functional capacity assessment adopted here." (R. 28). However, the ALJ failed to explain how exactly his findings were consistent with the multiple low GAF scores in the record, and his discussion of the treatment notes from MBH was not so detailed or thorough so as to excuse his failure to provide such an explanation.[4] (R. 28).

While the ALJ certainly was free to discount the significance of Plaintiff's low GAF scores, he was nevertheless obligated to acknowledge their existence and his failure to discuss and resolve the conflict that was presented by that relevant medical evidence precludes this Court from determining whether the ALJ "seriously considered and weighed the importance of [Plaintiff's low GAF] scores" in making his findings. Dougherty v. Barnhart, 2006 WL 2433792, at *10 (E.D. Pa. Aug. 21, 2006).[5] As such, the Court finds that substantial evidence does not support the ALJ's determination and further finds that remand is appropriate in this case.[6]

V.     **Conclusion**

In short, substantial evidence does not support the ALJ's determination of non-disability in this case because the ALJ failed to address numerous low GAF scores of 50 or below that

---

[4] To that end, the Court notes that in his discussion, the ALJ appears to believe that Plaintiff worked continuously as a sous chef from November 2009 through the date of his decision, but that conclusion is not supported by the record.

[5] This Court cannot surmise the reason(s) why the ALJ apparently discounted the significance of the GAF score evidence because to do so would violate the Chenery doctrine. See Fargnoli, 247 F.3d at 44, n.7 (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)) ("[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")).

[6] While the Court offers no opinion as to Plaintiff's remaining arguments, on remand, the ALJ must: (i) address all the relevant, probative evidence in the record and explain away any countervailing evidence, (ii) provide a fair and accurate summary of the evidence, and (iii) provide a thorough justification for his evaluation of the opinion evidence.

were contained in the record.  Accordingly, the Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch  
United States District Judge

ecf: Counsel of Record